**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PEARLIE MAE CALLOWAY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **SOCIAL SECURITY** | ) | **Case No.: 2:20-cv-00738-AMM** |
| **ADMINISTRATION,** | ) | |
| **Commissioner,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF DECISION**

Plaintiff Pearlie Mae Calloway brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

I.     **Introduction**

On December 6, 2017, Ms. Calloway filed an application for benefits under Title II of the Act, alleging disability as of May 1, 2017. R. 68, 152-58. Ms. Calloway's application alleges disability due to three bulging discs in her lower back, depression, an annular tear on the left side of her back, and arthritis in her thumb and back. R. 69-70, 152-58, 190-97. She has at least a high school education

and has past relevant work experience as an account representative, a substitute teacher, and a babysitter. R. 29. She previously filed another application for benefits, which was denied on February 15, 2017. R. 178. This appeal relates solely to Ms. Calloway's December 6, 2017, application.

The Social Security Administration ("SSA") initially denied Ms. Calloway's application on February 7, 2018. R. 22, 85-89. On March 22, 2018, Ms. Calloway filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 22, 93-94. That request was granted. R. 95-100, 110-15. Ms. Calloway received a video hearing before ALJ Steven M. Rachal on February 12, 2019. R. 22, 36-66. On April 4, 2019, ALJ Rachal issued an unfavorable decision, finding that Ms. Calloway was not disabled from May 1, 2017 through the present. R. 19-31. Ms. Calloway was fifty-three years old at the time of the ALJ decision. R. 27, 245.

Ms. Calloway appealed to the Appeals Council, which denied her request for review on March 19, 2020. R. 1-3, 149-151. After the Appeals Council denied Ms. Calloway's request for review of the ALJ's decision, R. 1-3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On May 21, 2020, Ms. Calloway sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id. Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20

C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Ms. Calloway would meet the insured status requirements of the Act through December 31, 2022. R. 22, 24. Next, the ALJ found that Ms. Calloway had not engaged in substantial gainful activity since May 1, 2017, the alleged disability onset date. R. 24. The ALJ decided that Ms. Calloway had the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, hypertension, anxiety, and depression. R. 24. The ALJ also stated that Ms. Calloway had a body mass index of 31.4 kg/m2 at the time of application. R.

24. The ALJ found that Ms. Calloway's hypertensive disorder, gastroesophageal reflux disease, solitary nodule of the lung, sciatica, superficial thrombophlebitis, Vitamin D deficiency, and mixed hyperlipidemia were "not severe" impairments as they "cause no more than minimal limitations in the ability to function." R. 25. Overall, the ALJ determined that Ms. Calloway did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 25.

The ALJ did not find all of Ms. Calloway's allegations credible and found that Ms. Calloway had the "residual functional capacity to perform light work" with certain limitations. R. 26-28. The ALJ determined that Ms. Calloway should avoid: more than occasional climbing of ramps and stairs; climbing ladders, ropes, or scaffolds; more than occasional balancing, stooping, kneeling, crouching, or crawling; more than occasional exposure to extreme cold; unprotected heights; and hazardous machinery. R. 26. The ALJ found that Ms. Calloway was limited to unskilled work with the ability to understand, remember, and carry out simple instructions and tasks for two-hour periods, with occasional work requiring interaction with the public, and infrequent workplace changes. R. 26, 29.

According to the ALJ, Ms. Calloway is "unable to perform any past relevant work," she is "an individual closely approaching advanced age," and she has "at least a high school education," as those terms are defined by the regulations. R. 29.

The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." R. 29. Because Ms. Calloway's "ability to perform all or substantially all of the requirements of this level of work" was impeded by additional limitations, the ALJ enlisted a vocational expert to ascertain whether there were a significant number of jobs in the national economy that Ms. Calloway would be capable of performing. R. 30. That expert testified that there are indeed a significant number of such jobs in the national economy, such as an office helper, a mail clerk, and a merchandise marker. R. 30.

Based on these findings, the ALJ concluded that Ms. Calloway does not have a disability as defined in the Act, from May 1, 2017 through the date of the decision. R. 30. Ms. Calloway now challenges that decision.

**III. Factual Record**

The medical records included in the transcript were made between 2015 and 2018, but the relevant period for the Commissioner's disability determination is May 1, 2017 through the date of the decision, April 4, 2019. R. 19-31, 178, 191. Ms. Calloway alleges she began having problems with bulging discs in her lumbar spine in 2012. R. 43. Ms. Calloway was involved in two car accidents in October 2016 and one car accident in January 2017 and went to a hospital emergency department

6

each time. R. 191, 283, 288, 293, 306, 315, 355, 396-97, 401, 598; Doc. 1 at 6. A C

spine CT following the first October 2016 car accident revealed "[n]o evidence of

acute cervical spine facture or subluxation," although the report noted "[t]here is a

lobular area of right pleural thickening." R. 359, 597. An X-ray following the second

October 2016 car accident revealed "no acute abnormalities" in the lumbar and

cervical spine. R. 399. Ms. Calloway reported "increased neck and back pain"

following these two accidents. R. 283. An X-ray following the car accident on

January 25, 2017 revealed "[d]egenerative changes [in the lumbar spine] without

acute abnormality." R. 405.

An MRI of the lumbar spine on May 19, 2017 revealed "[d]isc desiccation

seen from L3-L4 through L5-S1 [with] . . . [f]atty endplate changes seen at L5-S1"

with mild disc bulges at L3-L5 R. 313-14, 390-91. Dr. Carter Harsh noted in a June

2017 assessment, "There is suggestion of both L4 as well as S1 radiculopathy [but]

MRI is not particularly impressive" and ordered an L spine CT. R. 329. The July

2017 L spine CT revealed "advanced degenerative disc changes at L5-S1 . . . grade

I anterolisthesis at L4-L5 with disc bulge and facet joint arthropathy which

encroaches on the exiting L4 nerve root." R. 323-26. Dr. Harsh noted that the July

MRI showed "multilevel degenerative disc changes/spinal listhesis [with] . . .

multilevel foraminal narrowing." R. 332. Ms. Calloway ambulated into the

emergency department in 2017, and the clinical impression from her visit notes she

exhibited "[c]hronic left-sided low back pain with left-sided sciatica." R. 411. Overall, Ms. Calloway has been diagnosed with a herniated lumbar disc, lumbar radiculopathy at L3, L4, and L5, and global weakness and numbness in her left thigh. R. 318.

Additionally, Ms. Calloway has been treated for major depressive disorder, anxiety, and insomnia. R. 27-28, 317, 362, 367, 371, 381, 417, 424, 428, 434, 437, 468, 473, 475, 498, 605. Although Ms. Calloway has had suicidal thoughts in the past, R. 428, in September 2018 she reported that due to a change in her depression medication "she is really happy with how she is feeling currently," and medical records reveal no further reported thoughts of suicide. R. 489.

## IV.    Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V.    Discussion

Ms. Calloway filed this action for judicial review on May 21, 2020 by filling out a Pro Se Complaint for Review of a Social Security Disability or Supplemental Security Income Decision. Doc. 1. She alleged that the denial of benefits was in error because the SSA did not send her to a doctor; she did not have adequate time to

9

speak with her lawyer; she did not believe that her illness was considered alongside her medications that cause dizziness; the SSA combined her current disability application with a previous application; and the SSA did not review past records. Doc. 1 at 3-4. The Commissioner answered, and this Court directed Ms. Calloway to file a brief in support of her claim within forty-five days of receipt of the Appeals Council record. *See* Doc. 10, 11. Ms. Calloway did not do so. The Court also directed the Commissioner to file a brief in support of its decisions within thirty days after the expiration of the forty-five days for Mrs. Calloway's brief. *See* Doc. 11. The Commissioner did not do so. Deadlines for submission have passed, and the issues in this case are now ripe for decision.

## A. Lack of SSA-Directed Medical Examination

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual claiming benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The burden is on the claimant to introduce evidence in support of her application for benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  The Commissioner is not required to hire an expert medical source when determining whether a claimant is disabled. 20 C.F.R. §§

404.1513a(b)(2), 404.1517; *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) (holding that because "the ALJ ultimately found that [claimant] was not disabled . . . SSR 83–20 only required the ALJ to obtain a medical expert in certain instances to determine a disability onset date").

In any event, the ALJ did consider additional input. The Division of Disability Determination previously referred Ms. Calloway to Dr. John Neville for a psychological evaluation. R. 603. Dr. Neville saw Ms. Calloway on February 3, 2017, and diagnosed her with Major Depressive Disorder, Recurrent Episode, Mild. R. 603, 605. The ALJ considered and discussed Dr. Neville's findings in his decision. R. 25, 27-29. Additionally, the state agency's Disability Determination Explanation included a consultative examination, which the ALJ cited and found "very persuasive." R. 29, 69-84.

Ms. Calloway's argument regarding the necessity of a medical examination fails. Throughout the benefits process, the burden was on Ms. Calloway to demonstrate disability. The ALJ's decision finding that she did not demonstrate disability was based on substantial evidence, including input and findings from consultative examinations.

## B.  Complaints Regarding Legal Representation

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d

1420, 1422 (11th Cir. 1997). "A Social Security claimant has a statutory right, which

may be waived, to be represented by counsel at a hearing before an ALJ." *Id.* An

unrepresented claimant is not prejudiced, however, when the ALJ's "decision is

based upon substantial evidence appearing in the record as a whole." *Edwards v.*

*Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991). The ALJ's duty to develop the record

exists even when the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d

931, 934 (11th Cir. 1995).

Ms. Calloway was represented by counsel at her hearing before the ALJ. R.

36-66. Additionally, Ms. Calloway was represented through the Appeals Council

process, where her counsel filed a Memorandum in Support of Request for Review

of ALJ Decision. R. 245-47; *see also* Doc. 1 at 7-10. Further, Ms. Calloway does

not indicate what additional fact could have been submitted by her attorney that

might have changed the outcome, nor any evidentiary gaps in the record that the ALJ

should have developed. Accordingly, Ms. Calloway's assertion about her limited

opportunity to consult with her attorney is not a basis for reversal of the ALJ's

decision.

### C. Consideration of Illness and Medication Side Effects

It is the claimant's burden to introduce evidence in support of her application

for benefits. *Ellison*, 355 F.3d at 1276. While Ms. Calloway argues that the ALJ and

Appeals Council failed to consider her illness along with dizziness caused by her

medications, the record does not contain any evidence that Ms. Calloway complained of dizziness from her medications. Indeed, Ms. Calloway's Disability Report and her testimony at her hearing before the ALJ indicate that she did not so complain. Ms. Calloway filled out her Disability Report – Appeal by hand and listed "N/A" as "Side Effects You Have" for her current medications. R. 173. Her medication-related testimony at the hearing was:

> Q: Do you get side effects from the pain medication?
>
> A: No.
>
> . . . .
>
> Q: Okay. Now before you said you didn't have any side effects from your pain medication. Do you have any side effects from any of your medications at all?
>
> A: Yes. The gabapentin make[s] my mouth dry.
>
> Q: Okay.
>
> A: And the blood pressure medicine makes me kind of go to the restroom.
>
> . . . .
>
> A: . . . . And the medicine that I take makes me nauseated.
>
> Q: What medicine makes you nauseated?
>
> A: It's the gabapentin and the muscle relaxer. I have to take them three times a day. So when I take those I have, I can't function correctly.

R. 48, 61-62. Additionally, Ms. Calloway's attorney did not include an argument regarding dizziness to the Appeals Council. R. 245-47; *see also* Doc. 1 at 7-10. Because Ms. Calloway did not present evidence of dizziness at any stage of the administrative process and, when explicitly asked to testify about the side effects from her medication, she did not discuss dizziness, she cannot now prevail on her argument that the ALJ failed to develop the record in this regard, nor that the ALJ failed to consider evidence.

### D.  Prior Benefits Application

The SSA regulations govern how ALJs are to "consider and articulate medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c. Although an ALJ is not to "defer or give any specific evidentiary weight . . . to . . . prior administrative medical finding(s)," the ALJ may consider them. 20 C.F.R. § 404.1520c(a). An ALJ must "articulate . . . how persuasive" he found both medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b).

Ms. Calloway alleges that it was error to combine this application for benefits with her previous application, but the ALJ's decision complied with the regulations. ALJ Rachal noted that he "fully considered the medical opinions and prior administrative medical findings," and then went on to specify how persuasive he found both Dr. Neville's medical opinion and the state agency's disability determination. R. 28-29. Additionally, the record contains no evidence that there

was any improper consideration of her previously rejected benefits application, and

Ms. Calloway has not set forth any arguments related to this claim. Finally, there

can be no argument of inconsistent or contradictory benefits decisions by the SSA

because Ms. Calloway was denied benefits in both instances.

### E.  Review of Past Records

Ms. Calloway also alleges that the ALJ did not consider her past medical

records and instead focused on her more recent records from Cahaba Medical Care.

Doc. 1 at 4. This argument is not supported by the record before the court. In addition

to records from Cahaba Medical Care, the ALJ's decision specifically cited and

discussed medical evidence from Princeton Baptist Medical Center made between

October 11, 2016 and November 9, 2017, R. 396-413; UAB Highlands from October

4, 2016, R. 597-601; St. Vincent's Radiology and Neurosurgery throughout 2017,

R. 313-33; and Dr. David W. Cosgrove, PainSouth, Inc. from February 3, 2016

through July 13, 2017, R. 250-309.

### F.  Substantial Evidence Supports the ALJ's Decision

The parties did not submit briefing or legal arguments. Nonetheless, the court

has thoroughly reviewed both the ALJ's opinion and the evidentiary record.

Substantial evidence supports the ALJ's finding Ms. Calloway had the residual

functional capacity to perform a range of light work with certain limitations. R. 26.

In making his determination, the ALJ considered Ms. Calloway's testimony, Ms.

Calloway's treatment history, and the consultative examinations. R. 22-31, 36-66, 73-84, 603-06; *see Graham*, 129 F.3d at 1423 (holding that the plaintiff's ability to perform light work was properly found based on medical history and plaintiff's testimony).

The ALJ first considered Ms. Calloway's testimony. Ms. Calloway testified to several significant limitations, but these limitations are not consistent with the objective evidence. Although Ms. Calloway claimed she could not lift over ten pounds, bend over, walk, or stand, the evidence shows that she is still able to take care of herself, go shopping, prepare meals, do household chores, drive, and go out alone on a daily basis. R. 44, 51-52, 57-59, 61, 74, 77, 206-09, 425, 432, 436, 456, 459, 464, 467, 472, 475, 481, 483, 488, 492, 497. Additionally, Dr. Cosgrove noted that she was able to bend over during examinations, and Ms. Calloway testified in her hearing that she could kneel on one knee with support. R. 52, 295, 308.

Ms. Calloway further testified she experienced weekly symptoms of depression and anxiety that prevent her from focusing for longer than ten minutes, completing tasks, and "participating in family events or going shopping." R. 44-45, 54-56, 210-11. However, the record reflects that Ms. Calloway regularly attends family gatherings and repeatedly indicated to doctors that her physical and emotional health "never" limited her social activities with family or friends. R. 210, 425, 428, 432, 436, 456, 459, 464, 467, 470, 472, 475, 481, 484, 488, 493, 497. These findings

of Ms. Calloway's daily activities support the ALJ's finding of Ms. Calloway's residual functional capacity. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (finding the ALJ properly considered the plaintiff's daily activities).

Ms. Calloway's testimony is also inconsistent with her physical exams that were generally normal. R. 329, 455-58. For example, the ALJ noted Ms. Calloway's recent physical exams, even in spring and summer 2018, were generally normal. R. 28, 455-58, 493-94. Ms. Calloway's treatment history repeatedly reveals moderate objective findings, namely lumbar degenerative disc disease, hypertension, sciatica/radiculitis, anxiety, and depression. R. 254, 272, 274, 276, 283, 300, 306, 314, 317, 318, 322, 324, 325, 332, 362, 367, 371, 391, 405, 411, 417, 424, 428, 434, 437, 473, 498-99, 605. The ALJ properly used this information as part of making his determination about Ms. Calloway's residual functional capacity. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that a claimant's conservative treatment history supports the ALJ's decision); *see also Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016) (affirming the ALJ's decision, which was based on plaintiff's records of mild treatment).

Ms. Calloway's consultative examination concluded that she was capable of light, unskilled work, and properly informed the ALJ's residual functional capacity assessment of light, unskilled work with certain limitations. The ALJ found the consultative evaluation "very persuasive" because the evidence as a whole supported

its conclusions. R. 29; *see also* 20 C.F.R. § 404.1527(c)(3) (noting that more weight

will be given to a medical opinion in which the medical source presents relevant

evidence to support that opinion); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more

consistent a medical opinion is with the record as a whole, the more weight we will

give to that medical opinion."). Although the consultative examination noted that

Ms. Calloway had physical impairments of DDD (Disorders of Back-Discogenic and

Degenerative), unspecified arthropathies, and hypertension, the record reflects that

Ms. Calloway had "5/5 strength" in both lower extremities and normal, if slow,

ambulation. R. 76, 80, 438. Accordingly, the consultative examination concluded

that Ms. Calloway was capable of light work, which includes occasionally lifting

twenty pounds and standing or sitting about six hours in an eight-hour workday. R.

78.

The examination further noted that although Ms. Calloway had mental

impairments of depressive disorder and anxiety disorder, she was still "able to drive,

shop[,] and prepare meals"; her "memories were intact along with insight[] [and]

judgment"; and "overall evidence supports a not severe impairment." R. 76-77.

Considering these non-severe mental impairments, the consultative examination

concluded Ms. Calloway was able to carry out simple tasks for up to two hours,

receive non-confronting criticism, and operate under casual contact with the public.

R. 82. This conclusion is consistent with an evaluating psychiatrist's report in

February 2017, which indicated Ms. Calloway's "ability to maintain concentration and sustain a reasonable work pace did not appear impaired," although her ability to "respond appropriately to coworkers" and "cope with ordinary work pressures" was mildly to moderately impaired. R. 606. Notes from a March 2018 counseling session are also consistent with this analysis, stating that while Ms. Calloway's mood was "irritable," her insight and judgment were "fair." R. 460. Accordingly, the consultative examination and overall record provide substantial evidence that supports the ALJ's residual functional capacity determination of light, unskilled work with certain limitations. *See Stone v. Comm'r of Soc. Sec.,* 544 F.App'x 839, 843 (11th Cir. 2013) (holding that when an ALJ relied on a consultative examination and opinion, that was substantial evidence to support the ALJ's determination of claimant's condition).

Altogether, substantial evidence supports the ALJ's determination that Ms. Calloway has the residual functional capacity to perform a range of light work with certain limitations articulated by the ALJ. Accordingly, the ALJ's decision applies the proper legal standards and is supported by substantial evidence, and the ALJ did not err when he concluded that Ms. Calloway is not disabled.

## VI.   Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 7th day of September, 2021.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE